Pleased to court, my name is David Wooley. Yeah, I know who you are, David. Former partner of the great David Harney. Yes. He's no longer with us. I represent Rick Carone, not Caroney. I'd like to reserve five minutes. Who do you represent? Rick Carone, Richard Carone. Oh, I thought you said you represent someone from Rome. No, that's the gentleman on your right. All right, okay. My client's an honest man who was damaged by a plaintiff's vendetta and by an inattentive lawyer, his own. It makes no sense for him to have litigated the alter ego issues, in this case in Texas, right the way through appeal, then to get sued here again on those same issues, to answer, to oppose them, to litigate them, to get a judgment from Judge Marshall which says that alter ego is excluded on the 27th of June, and then to go into default on those same issues on August the 1st. That wasn't my client's doing. That was his attorney's doing. And as a consequence of that, what do you think flows? Everything failed. My client was winning the case. When you look at the technical issues, the stream of issues, he had received rulings that this was a contract and fraud case only, that California statute of limitations applied as to contract, effective February 1999, and as to the fraud, effective February 1998, that Texas law of alter ego applied, and that alter ego was a theory of the case and not a cause of action. Now the peculiarity of this case is that alter ego doesn't exist in Texas to any degree anymore. But everything he'd succeeded in this case, he'd got a Texas ruling which said he is not the alter ego of these cases, and he'd spent a lot of money in getting that. And he'd come here and he'd fought the alter ego issues here, and then because his lawyer didn't answer untimely requests for admission, he defaulted. He was defaulted against his will. He says categorically he never intended to default. The default turned into a default judgment for $36.5 million, based entirely on the Texas ruling, and that $36.5 million ruling has itself been overturned in Texas for lack of any competent evidence. The damages part. The damages part. For the second time. Now why did my client use an inadequate attorney? And it's just a matter of funds. You'll see from the record from Exhibit 28 that he was born poor in East Los Angeles. He went through community college, the Army, SC, and he came out a petroleum engineer. Who's this? My client. Born poor. He doesn't have any assets worth speaking of. His entire income is tied up in the price of a barrel of oil. When oil's high, he's doing well. When oil is low, he can't afford a good lawyer. And in 2004, the price of oil was low, and he got himself what he could afford. And I'm afraid it wasn't the right thing. Willie is dropping your voice. I'm so sorry. I should speak up. Speak up. He got what he could afford, I'm afraid.  Now that lawyer has put in, in this case, a declaration of fault. And at an earlier case, Judge Trott remarked that if any attorney could say it's his fault, the case will come to a halt. The courts will come to a halt. We all agree. California has a very specific, very limited situation, where if a default is caused to the client that is the result of the attorney's error, and the attorney files this declaration of fault, which is an invidious document, if the attorney files it and the court finds the attorney was at all at fault, then that default must be set aside. How did Judge Marshall resolve all of this? Judge Marshall resolved it by saying, A, she didn't believe it was the attorney's fault. It was my client's fault. She had no logical basis to say that. You mean that's all she said? Fundamentally, yes. Well, strike fundamentally. What did she say? She said it at some length. See, I don't like words like intended or fundamentally. She said it at some length. She said it at some length, that's right. She did. And she said that Mr. Carone had engaged in discovery abuses in other cases, in other jurisdictions, and he hadn't. Now, this is the point. We have constantly plaintiffs claiming that Carone is the alter ego of all these other corporations, so everything they do wrong is his fault. The Texas courts said he is not their alter ego. So when Judge Marshall said, Oh, I'm going to accept that those other corporations were, and that what those corporations did wrong in Texas is to be blamed on Mr. Carone, she was wrong. And Mr. Carone put in his own declaration stating categorically that he did not intend to default, and that he believed he did have a way to answer the complaint and all the other ways. Are we dealing with a finding of fact by Judge Marshall that it was his fault and it has to be clearly erroneous for us to overturn it? To that extent, you might be. If the court accepts my theory that this is an eerie matter and that the California 473B applies, as the attorney declaration of fault applies, and there was an attorney who said it was his fault, and Judge Marshall said, No, it's not. It's the client's fault. Then you have a question of clear error. You have another issue of legal issue there because the attorney has said it is his fault. And under California law, the statement by the attorney is itself worthy of credence. But you could say it's the judge's finding. I think it is. California law says that an attorney can be partially at fault and the error must be set aside. But let us deal with the clear error point that you have made, sir. Mejia says that when the court finds a matter of intent or credibility, the court must have observed the demeanor and the conduct of the witness in order to make such a finding. And in this case, it is only declarations that are before the court. There was no possibility for Judge Marshall to consider the demeanor of Mr. Carone to see whether or not he intended to defect. Well, isn't that Mr. Carone's problem? If he wants to present himself personally to the court, he can, can't he not? He could at all times. He was available. He didn't. He is the burden on this. He's trying to get out from underneath. Correct. And if you say, well, then you should have put him forward just to explain why he did or didn't do this. It wasn't counsel at the time. No, I mean you globally. Right. And it didn't happen. So I don't see how that you can tell us now it's in his favor that he didn't show up. Because he filed his declaration. Judge Marshall refused to accept it. Or Judge Marshall then. So Judge Marshall made her findings of lack of credibility of Mr. Carone in the context of the post trial motion. Those are generally heard on pleadings rather than on live testimony. I've never seen a post trial motion heard with live testimony. It is true that it would be nice if Mr. Carone were there. But Judge Marshall was not able as a matter of law to make her finding that Mr. Carone was incredible without his being there. And he lives in Santa Barbara. He could come down without the slightest problem. But there is another problem in this case. And it's the one that that keeps raising its head. It's the alter ego argument. And what happened in Texas? The Texas court found that Carone was not the alter ego of the defendant corporations. Immediately that happened. Carone was sued on exactly the same theory in California. Now at the time that was not the right thing to do in Texas and it's not the right thing to do in California. But the Gupta case has since come down. Gupta versus Thai International Airways, which says categorically that's not the right thing to do. Mr. Gupta sued in state court under the Foreign Sovereign Immunities Act and the commercial exemptions doctrine. He lost and the case was dismissed. He then sued in federal court under the same theory of liability, but claiming that the Warsaw Treaty created the treaty variation to the Federal Sovereign Immunities Act. And this court, this panel recently said that that is not this panel. A panel of this court said that you are entitled to sue the first time, but you must get all your jurisdictional facts in a row. It was not possible to sue. Are you saying that since the Texas court found that Mr. Carone was not the alter ego of these various corporations, that that ruling should be given full faith and credit in this jurisdiction and that when you're talking about the ruling that he's not the alter ego, that means that he shouldn't be held liable for the abuse of the corporate privilege of limited liability. And that also encompasses some of this other language that we see here about fraud and let me see what the other language is. Sham and illegal funds. Sham and illegal and all that falls under the same umbrella, huh? Exactly, sir. I'm saying exactly that. And I'm saying it because the Texas legislature did so. The Texas legislature said so when it abolished the alter ego doctrine, including the sham and illegal purpose subsets of the doctrine. The Texas legislative enactment is the appendix to my opening brief, the blue brief. And there had been a case in Texas which had applied alter ego very, very broadly. And the legislature had reacted in revulsion against it and had abolished the doctrine to all extents and purposes with the exception of a very limited doctrine of fraud for the direct personal benefit of the individual. But there was, if that is the only doctrine that's in existence, then when the Court of Appeals found that Mr. Carone was not the alter ego of any of these corporations, they found he was not the alter ego of any of these corporations with the intent of committing fraud to the direct personal benefit. There is a possibility that Texas, because of Texas's extraordinary long arm laws, has a very broad jurisdictional theory of alter ego and a very narrow liability theory of alter ego now. It's not clear. But even if that's the case, when the Texas court says you are not the alter ego of these corporations in the broadly jurisdictional theory, then it's taking that issue away from a later federal case. I do not see how it could be argued, given Gupta, that alter ego remains in this case. If that's the situation, we are left only with Judge Marshall's findings of conspiracy. And that's a peculiar little problem in this case. Mr. Carone was asked, admit you conspired with all these other entities. And he didn't respond. Based solely, and Judge Marshall finds in her opinion that it was solely upon that silence, she found a conspiracy existed. Now we have in the Federal Rules of Evidence, Rule 801, the hearsay rule. And the hearsay rule says a statement must be intentional. And I've addressed the intentional point in the context of the attorney's affidavit of fault and my client's own statement that he did not intend to make a statement. But there is this second part of the hearsay rule, Rule 801, which says that you can't find a conspiracy based upon the statement of one person alone. I look at you, sir, with some deference, because you know a lot more about criminal law than I do. And conspiracy comes up in criminal law a lot more than it does in civil law. But you can't do it. That's the Bourjali case. That's the commentary to the Rule 801. And that's the Murphy case that was decided in this jurisdiction 55 years ago. Yeah, but if I, in a civil case, you charge me with a conspiracy and I admit there was one, that's the end of it. I think there has to be another fact. You can't just say I was a conspirator. You think, I think, I said this before, I think a lot of things too, and they're all wrong. Well, actually, I think I can. Sorry for that. The rules are the commentators to the code say, give me some help. The amendment resolves an issue on which the court had reserved jurisdiction, decision. It provides the contents of the declarant's statement do not alone suffice to establish a conspiracy in which the declarant and the defendant participated. The commentators found that whilst the Supreme Court in Bourjali had not decided that issue, every single circuit in the nation had in the same way. Therefore, it wrote this thing in. If the rule is, I cannot say I conspired with you and thereby create a conspiracy, how can the reverse be valid? You conspired with me. It can't do it. You've got to have something else. And it makes it even worse if it is, admit you conspired, and the answer is silence. It is not reasonable to create a conspiracy under those circumstances. How about this recent Texas case? That help here. The recent Texas case where they kicked aside the damages way through all the damage is out in this case. Yes, your honor. I believe it does. But I believe it does. If we rule against you and everything else, it has to go back on damages. Absolutely. Going back to your eerie Hannah versus Plummer argument and all the rest, the problem with that is you want us to import California law as outcome and determination of this case. And I'm not so sure that, well, forget about the 60B and the federal side of things, but if we were to do that, wouldn't it be Texas law? That's what Judge Marshall ruled. You'd have to use Texas law, not California law. She ruled that in the. What's the error there in saying this is Texas law? She previously ruled that all the procedural issues before her were to be under California law. That was her ruling of. Give me two seconds. It's docket. She previously ruled that. Docket 14. When it came to the choice of law, it was Texas. No. Except the record 14, which is her ruling of about February the year before, she ruled that Texas law governs substantive rights and California law governs procedural rights, including statutes of limitation. In this case, she specifically made those findings. Go back to my first day in law school. What substance? Yes. And what's adjective water? But she made that clear distinction. That's why alter ego in this case is being governed by Texas law and why the procedural issues in this case are being governed by California and, to the extent it's federal, federal law. Want to save some time for rebuttal? I think I shall indeed, sir, and thank you very much for hearing me. Thank you. Good afternoon, Your Honors. Calhoun Bobbitt for Retomco Operating, Inc. I think I'll address first the last statement that Mr. Woolley made because it's not correct. There is no ruling in this record by Judge Marshall that California procedural law would govern matters of procedure in this case. That's, number one, she didn't make that ruling. Number one, that's not a ruling that a federal court sitting in diversity can make. The eerie distinction between matters of procedure and matters of substance is that federal procedural law governs procedural matters and state substantive law governs substantive matters. Which would be Texas. Which would be Texas. And so that is why you can't get to California Civil Code Section 473, which is a matter of procedure, in order to decide this case. If it's a matter of procedure, which we think it is very clearly, a procedure for obtaining relief from a judgment entered as a result of default, then you go to federal law. 60B. That would be Rule 60B or Rule 36B, which governs a procedure for seeking permission to withdraw an admission, any kind of admission, a deemed admission or an express admission. If it's substantive law, then you would have to go to Texas. As Judge Marshall ruled, and there's been no complaint about it, that if it's substantive law, then you go to Texas law. Texas law also has procedures for relief from judgments, but nothing that is just like the California procedural law. In other words, there is no route that you can take to reach California procedural law in this matter. The only possibility would be to say that somehow this is a, well, frankly, you can't get there. And so I'll just leave it at that. Judge Marshall does engage in considerable discussion about Mr. Caron's credibility and all that kind of business. The declaration of fault by Larry Rothman, how does that come into the picture? Well, Did he ignore that? Or should she have ignored that? No. I think she could take it into consideration. If it's a Section 473 under the California Civil Code proceeding, then it's a finding of fact. In other words, You just convinced me that it's not California, so let's try to retreat to California. Let's forget about that. And you've got two things. You're under Rule 59. Number one, you have to be convinced that it was an abuse of discretion for her to deny post-judgment relief. What did Rothman say? Rothman said that, even though I have extensive experience in federal trials, that I thought the state of California rules regarding requests for admissions and how many could be served and when they had to be answered applied. I thought that because other counsel was in the process of substituting in this case, that nothing had to be done. Larry Rothman's affidavit was not credible. It was equivocal. It was evasive. Why is that? I mean, it seems to me it's almost a declaration against not penal interest but civil interest. Lawyers don't usually walk in and say, Hey, I committed malpractice. File your lawsuit. Well, they might do that in order to avoid certain other consequences of their actions. Such as? Well, such as what the client might do if they don't. But that's speculation on my part. I don't know why Larry Rothman did this, and I'm not here necessarily to defend Larry Rothman. But the court should bear in mind that Richard Carone had other counsel in this case. Larry Rothman was not its only counsel. It had the very same counsel who had litigated for Mr. Carone to the extent he did litigate in Texas, and I'd like to get to that. How do you visit all these discovery abuses on the client? Well, first of all, you look at the history of this litigation, Your Honor. This litigation started in Texas. It was filed against companies owned and controlled by the present defendant, Richard Carone. Those three companies, after years of litigation, after about four or five years of litigation, many motions to compel, many sanctions orders. I don't understand the case because I thought he got out of the Texas case. Eventually he was added as an individual defendant in the Texas case. He was not there very long. He filed a motion under Texas practice. It's called a special appearance, simply asserting that I am not. Contesting jurisdiction. Contesting personal jurisdiction, and the case against him was dismissed for want of personal jurisdiction. Right. So how do we visit against him discovery abuses in Texas? Well, as Judge Marshall reasoned, these were companies that were his companies, and that. . . What does it mean, his companies? Companies that he owned and controlled. Sole proprietorship companies? No. Corporations. Corporations. Corporations, which were indirectly owned by him through this web of corporations that are mentioned in the briefs. But the Texas court, didn't the Texas court determine that he was not the alter ego? Right. The Texas court determined that there was not sufficient evidence introduced at a special appearance hearing to find that he was alter ego. Now, that brings us to. . . The actions of the corporations? Is that what that means? If that were a decision on the merits, it would mean that he could not be held liable under an alter ego. Yeah, but it's a decision on the facts. Yeah. The jurisdictional facts, and facts stick. Well, I. . . So why. . . There's two things here. Here, see, to me, maybe I'm being simplistic about this. The Texas court found that he was not the alter ego. All right? Correct. Then we come here. All right? And then he's sued over here. Now, for the activities of these corporations, right? Right. Okay, now, if we're going to give full faith and credit to the Texas court's determination, and they were looking at facts, then how can we then, in a federal court, make a determination that the corporate entity should be disregarded because he abused that corporate entity? That's the way I learned it at law school. That was way before Wooley got to this school. But that's the way the great Henry Winthrop Ballantyne taught us. So, I mean, if you commit fraud, you abuse the corporate entity, you know, if you do those bad things. Right. But here they said there's no alter ego. You don't pierce the corporate veil. You don't disregard the corporate entity. So how do you get personal liability against him if you give full faith and credit to that Texas ruling in California? Because under the law of Texas, alter ego is only one theory of corporate disregard. There are other very well recognized and still recognized theories of corporate disregard. Alter ego in Texas means that a corporation has failed to observe corporate formalities or that there's been commingling of funds or situations like that where Texas law refuses to recognize the separate existence of a corporation. Or there's been an abuse of the limited liability, right? That's a separate theory of corporate disregard. It's all the same. No, it's not. Oh, yes, it is. So you say alter ego was one theory under Texas law to go after Mr. Carone. That's correct. There's lots of other theories, too. There's at least two more. Okay. My law professor would say, well, then how come you don't have issue preclusion? You should have litigated those there and your failure to do so binds you on those. Why didn't you pursue all those other things in Texas? Because he was dismissed from the case for warrant of personal jurisdiction at a very preliminary stage. Mr. Wooley would have you believe that. You tried to hold him in under an alter ego theory, right? Alter ego only. Why didn't you use all those others? That's the point. Because there had been no discovery in the case. Yet Mr. Wooley would have you believe that there had been some long process of litigation with Mr. Carone in the Texas case. It hadn't happened. The Texas rules. Sometimes special appearance litigation takes a heck of a long time. The Texas rule says that a special appearance must be heard and determined before any other plea or motion. And that is why it says that any motion to challenge the jurisdiction provided for herein shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard. No determination. But you could have taken depositions and gotten some discovery. Sure. And to show that, well, one of these other theories would not have to hold this guy in here. Judge, the rule says no determination of any issue of fact in connection with the objection to jurisdiction is a determination of the merits of the case or any aspect thereof. That is Texas Rule 128. Couldn't you have defeated his claim of no jurisdiction by showing one of these other theories besides alter ego? Yeah, we got him because of X, Y, Z. At the time, it wasn't even pled, Your Honor. Who didn't plead? The plaintiff. Ratomko had not pled fraud at that time. Well, the use of the corporation as to perpetrate fraud. Alter ego was pled. You can look at the Gupta case. You can look at any of these cases. So what was the suit about? They knew they got defrauded, right? Yes. Yeah, so why didn't they plead fraud? Well, they had pled fraud against the three corporations, what we call the three P's. But if he was running it all, why wasn't that used to keep them in? Well, ultimately it was, but he was out of the case so fast in Texas that there was no opportunity to develop all that because that had to be determined before any other plea or motion. You mean you can't take any discovery in Texas to determine whether there's jurisdiction over the person or not? You can. And let me tell you what happened with Mr. Carone in Texas. We served requests for admissions on Mr. Carone in the Texas case to which he failed to respond. Of course, because he's going to litigate his jurisdiction first. You filed him in connection with the basic charges, not in connection with the special appearance to fight jurisdiction. We filed them to just get him to admit the genuineness of a number of documents that we had, which we believed were relevant to the issue of alter ego. See, I'm not going to answer admissions either if I'm planning to go in and say you don't have any personal jurisdiction over me. I'll answer after I lose, but not before. I was saying that in response to the question or the statement we could have taken all the discovery that we wanted on jurisdiction. I'm just having trouble figuring out how you can hold discovery abuses against somebody who successfully says, you don't have any jurisdiction over me. I don't have to do anything here because you don't have any jurisdiction over me. He was successful. That's fine. And so we sued him here in California. How can you say that's a big discovery abuse in Texas if Texas didn't have any jurisdiction over him under the theories that you used and pleaded? He's a way Scott claimed. You had no power over me at all was the Texas ruling in his favor. Well, the law in Texas is that a party who has a pending special appearance is subject to discovery directed to the jurisdictional issue. He can't just sit there, refuse to participate in discovery. Did you hit him with any discovery requests targeted to that special appearance to contest jurisdiction? The request for admissions. Was it in connection with that appearance? Yes. And he didn't respond. Just like his companies. Well, how about taking depositions of him? He did not. There was a writ of attachment issued out of a Texas court for Richard Carone for failure to appear for depositions and for failure to appear for a show cause hearing to show cause why he should not be held in contempt. That was before his special appearance to contest personal jurisdiction. I don't believe it was. It must have been. It was afterwards. Because you can't do that after the court's decided you don't have any jurisdiction. Then why would you go file a whole bunch of requests for admission after the court throws the case out for no personal jurisdiction? You can still be a witness in a case, Your Honor. Did you subpoena him as a witness? Yes. The history of discovery abuse by. . . Well, where was he at the time? At what time? Where was Carone at the time you served him with his subpoena to take his deposition? Well, first of all, the evidence in the record was that he was avoiding service of process. This is in the record. He was continually avoiding service of subpoenas, as were his employees. Finally, he was served in California. And we weren't trying to bring . . . We would have taken his deposition in California. There are procedures to do that. Yeah. But he did not appear. Well, there's a court order if he doesn't appear. We got one. Huh? We got a court order to hold him in contempt. All right. And so what did you do then? Well, he didn't come back to Texas so that he could be arrested, and it's very difficult to extradite somebody on a civil contempt order. Well, I mean, couldn't you get the California courts to arrest him? Well, that's under the extradition laws. Believe me, Your Honor, we looked into it. No, no, you come here. You can't come here with an order out of a Texas court for a civil contempt violation and have a California . . . If you've got a witness that you need and it's in California and you've got a case in Texas, you're telling me that there's no way you can take that person's deposition pursuant to sanctions of the California court? The order for Mr. Carone to appear for a deposition came out of a Texas court, which issued a commission to take his deposition in California, which means that a process can be served on him here in California to appear for a deposition. When he doesn't do it, it is a contempt against the Texas court. I'm completely hung up on the idea that Texas never had any jurisdiction over him, so all the rest of that stuff is irrelevant. You can call it a discovery abuse. You can call it anything you want, but if Texas never had personal jurisdiction over this man, I don't see how any of it counts as a discovery abuse. It's all null and void. Well, then let's talk about his discovery. I've only got two minutes left. Let's talk about the discovery in this case. There was not one request for admissions. There were five. He didn't respond to any of them. There was a request for production. He ignored that. There were two sets of interrogations. Or his lawyer. According to Judge Marshall, based upon all of the evidence contained in the declaration that we filed, and according to the recitation that she made, which must be accepted unless it was clearly erroneous. Well, where does he say, I made the decisions and told my lawyer don't file anything, don't respond to any of this? He never says that. Of course not. And the lawyer says what? It was all my doing. That's right. So where's the substantive foundation for he did it? Well, here's what Judge Marshall said. In light of the defendant's discovery abuse in this case, as well as the pattern of flagrant abuse in the Texas litigation, as well as the fact that he had three law firms, not just Larry Rothman in this case, all of whom were served with the discovery, defendant's effort to shift the blame to his attorney is not persuasive. Rather, the weight of the evidence, including previous findings by this court, suggest that the failure to respond was the result of defendant's deliberate and calculated decision. This has been going on in Texas for years. It's been going on in the courts of California for years. Given the amount of experience that Larry Rothman had, Larry Rothman knows. Larry Rothman, it's in the record that he has tried hundreds of federal cases. He knows the rules. He knows the rules. Does he explain why he didn't do what he was supposed to do? No. He says that I thought California state court rules applied. I thought that nothing had to be done because another one. He's not saying my client told me to tell him to go to hell and don't do anything. No, he's just coming up with incredible reasons for this not being done. Well, if he tried hundreds of cases, I never heard of him before. Well, I don't know what to say to that, Your Honor. I mean, that's what he said. And that's evidence in the record, and that's evidence that Judge Marshall credited. It is a little odd. I mean, he fought like crazy up until a certain point, and then he just disappears off the face of the litigation map. He never fights like crazy in participation in discovery. He provides no information. He has his lawyers engage in a lot of motion practice, just like in this case. He filed motions to dismiss on the pleadings. He filed motions to dismiss for one of jurisdiction. He filed all kinds of motions. Well, he's telling these lawyers, do this, don't file out, do this. I mean, that's not the way it really works. You go to a lawyer and the lawyer says, we'll do this, we'll do that. Your Honor, he's had nine or ten different lawyers in law firms, and it always comes to the same thing. Eventually, it comes time for him to have to testify and give evidence, and that's when the default happens. That's when the default happens in Texas. He ordered them to default because he knows he's going to get a $36 million judgment against him. That's the presumption that is stated in the cases, Your Honor, that a consistent pattern of discovery abuse leads to an inference that the defendant has no defense on the merits. And so when the procedural obstacles, when the motion practice, when all that stops, and when he's got five requests for admissions that he hadn't responded to, two sets of interrogatories that he hadn't responded to, he's reminded of this at a hearing in August of 2005 when Ratonko, because we haven't been able to get any discovery, we're asking the court to extend the discovery deadline. We're pointing all this out in open court, and they oppose. They oppose any extension of discovery, having not responded to any. And when the consequences of that are finally visited upon him, he says, but I had a defense on the merits. I wanted to testify. Well, you know, Judge Marshall didn't believe that because there's just no possible credibility to it. My time's up. I've spent a lot of time just talking about there's lots of other issues in the case. Okay. We got it all in the brief. And I think your time's up, too. I reserved a slide, didn't I, sir? He did reserve a couple. Oh, you did reserve a couple? What do we got? You got? Two minutes. I'll tell you, I'll make you a deal. You take one minute, give him one minute. I'll be very brief. Yeah. Okay. We'll give you a- Here are my points, sir. Yeah. One, I know nothing at all about this deposition in Texas that has produced a commission. I do know that my client has been deposed here in his bankruptcy, and that I have offered him for deposition time after time after time in the last year and a half to plaintiffs, and they have refused to take it. Secondly, in Texas, it's not just a matter of not having any discovery. The Texas Court of Appeal opinion says 143 exhibits were filed by plaintiffs to show why my client was the alter ego. This is not a matter of no evidence. Thirdly, you're quite right, sir. Issue preclusion applies here. Alter ego is both broad and narrow. We have quoted a case from the Fifth Circuit which says it is much easier to use the word alter ego in a decent English sentence than to use piercing the corporate veil. The Texas statute that abolished alter ego abolished both sham and illegal purpose doctrines at the same time. Lastly, let us talk about the requests for admissions. On June the 27th, Judge Marshall ordered that all alter ego issues are precluded. And so two days later, the third set of requests for admissions is filed by the plaintiffs in violation of a court order. They are to be answered the day after discovery cutoff. My client's lawyer messed up. There's no doubt about it. He messed up. But those requests for admissions violated the rules in every single respect. Thank you very much. Mr. Wooley, I think the last time I saw you was 20 years ago almost to the day in the Interpool case. Oh, yes, it was indeed, sir. Thank you. You want to go ahead.
judges: Pregerson, Noonan, Trott